UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

EARL GUMBS,

        Petitioner,

    v.

PHILIP L. RHONEY, as Acting Field
Office Director, Buffalo Field Office, U.S.
Immigration & Customs Enforcement, et
al.,[1]

        Respondents.

**DECISION AND ORDER**

6:26-CV-06072-EAW

---

Petitioner Earl Gumbs ("Petitioner") is a civil immigration detainee alleging that he is being unlawfully detained in United States Immigration and Customs Enforcement ("ICE") custody pending removal proceedings. (Dkt. 1). He seeks relief under 28 U.S.C. § 2241. (*Id.*). He is being held in ICE custody at the Buffalo Federal Detention Facility. (*Id.* at ¶ 10). Because the Court lacks jurisdiction to entertain Petitioner's challenges to his removal based on his prior convictions for alleged crimes involving moral turpitude, the petition is dismissed without prejudice.

---

[1]    Todd Blanche is the Acting U.S. Attorney General and is substituted in place of Pam Bondi pursuant to Federal Rule of Civil Procedure 25(d). In addition, Markwayne Mullin is the Secretary of the Department of Homeland Security thus is substituted as Respondent in place of Kristi Noem. David Venturella is the Acting Director of ICE and is substituted in place of Todd Lyons. The Clerk of Court is directed to update the docket to reflect these substitutions.

## BACKGROUND

Petitioner, a native and citizen of St. Kitts, arrived in the United States at the age of 11, in October 2007 as a non-immigrant B-2 visitor. (Dkt. 1 at ¶ 1; Dkt. 9-1 at ¶ 5). He received Lawful Permanent Resident status in March 2007. (Dkt. 9-1 at ¶ 6).

Petitioner was arrested on July 9, 2010, for criminal possession of a narcotic drug in the fourth degree in violation of New York Penal Law § 220.09 and unlawful possession of marijuana in the second decree in violation of New York Penal Law § 221.05. (Dkt. 1 at ¶ 20; Dkt. 9-1 at ¶ 7). On January 3, 2011, Petitioner was convicted of criminal possession of a controlled substance in the seventh degree in violation of New York Penal Law § 220.03 (class A misdemeanor) and sentenced to three years probation. (Dkt. 9-1 at ¶ 7).

On April 5, 2014, Petitioner was issued a Notice to Appear ("NTA") arising from his controlled substance conviction. (Dkt. 9-1 at ¶ 8). On September 13, 2018, the removal proceedings were terminated without prejudice by an Immigration Judge ("IJ"). (Dkt. 9-1 at ¶ 8).

Petitioner was arrested on February 17, 2015, for theft of services (intent to obtain transportation without paying) in violation of New York Penal Law § 165.15 and criminal trespass in the third degree in violation of New York Penal Law § 40.10. (Dkt. 1 at ¶ 21; Dkt. 9-1 at ¶ 9). On August 26, 2015, he was convicted of criminal trespass in the third degree (class B misdemeanor) in violation of New York Penal Law § 140.10 and received a conditional discharge subject to the completion of community service. (Dkt. 9-1 at ¶ 9).

Petitioner was arrested on October 12, 2015, for theft of services (intent to obtain transportation without paying) in violation of New York Penal Law§ 165.15.  (Dkt. 1 at ¶ 22; Dkt. 9-1 at ¶ 10).  On October 13, 2015, Petitioner was convicted of theft of services (intent to obtain transportation without paying) in violation of New York Penal Law § 165.15 (class A misdemeanor) and sentenced to time served.  (Dkt. 9-1 at ¶ 10).

Petitioner was arrested for criminal trespass in the second degree in violation of New York Penal Law § 140.15 and harassment in the second degree in violation of New York Penal Law § 240.20 on March 14, 2023.  (Dkt. 1 at ¶ 24; Dkt. 9-1 at ¶ 11).  On March 15, 2023, Petitioner was convicted of disorderly conduct in violation of New York Penal Law § 240.20 (violation) and sentenced to time served.  (Dkt. 9-1 at ¶ 11).

Petitioner was arrested on October 12, 2023, for criminal possession of stolen property in the fifth degree in violation of New York Penal Law § 165.40. (Dkt. 9-1 at ¶ 13).  On July 2, 2024, Petitioner was convicted of disorderly conduct.  (Dkt. 9-1 at ¶ 13).

Petitioner was arrested on May 19, 2023, for vehicular assault in the second degree in violation of New York Penal Law § 120.03(a) and subsequently charged with manslaughter in the second degree in violation of New York Penal Law § 125.15(1), criminal possession of a controlled substance in the fourth degree in violation of New York Penal Law § 220.09, and assault in the second degree in violation of New York Penal Law § 120.05(4).  (Dkt. 9-1 at ¶ 12).  On December 19, 2024, Petitioner was convicted of manslaughter in the second degree (class C felony) in violation of New York Penal Law § 125.15(1) and sentenced to three years incarceration.  (Dkt. 9-1 at ¶ 12).

On December 4, 2025, DHS issued an immigration detainer to the New York State Department of Corrections and Community Supervision ("DOCCS"), Petitioner's custodian. (Dkt. 9-1 at ¶ 14). On January 5, 2026, DHS issued an NTA on Petitioner, which was served upon him on January 16, 2026, and placed him in removal proceedings. (Dkt. 9-1 at ¶ 15). The NTA charges Petitioner as being removable in light of his convictions of two crimes involving moral turpitude not arising out of a single scheme of criminal misconduct under 8 U.S.C. § 1227(a)(2)(A)(ii). (*Id*; Dkt. 9-2 at 1). The crimes identified as involving moral turpitude were Petitioner's February 5, 2025 conviction for manslaughter in the second degree and his October 13, 2025 conviction for theft of services. (Dkt. 9-1 at ¶ 15; Dkt. 9-2 at 1-4). Petitioner was released from custody at Wende Correctional Facility on January 16, 2026, and transferred to ICE custody. (Dkt. 1 at ¶ 1; Dkt. 9-1 at ¶ 16). On March 18, 2026, an IJ rejected Petitioner's motion to terminate his removal proceedings, concluding that his convictions for manslaughter in the second degree and theft of services constitute crimes of moral turpitude for purposes of 8 U.S.C. § 1226(c). (Dkt. 11 at 2-4).

Petitioner filed his habeas petition on January 16, 2026. (Dkt. 1). This Court entered a scheduling order directing Respondents to file and serve an answer to the petition within 30 days. (Dkt. 2). On February 6, 2026, Petitioner filed a motion for a temporary restraining order (Dkt. 6) and for expedited hearing (Dkt. 7), seeking to stay Petitioner's removal proceedings and removing him from the Western District of New York pending resolution of the petition. The Court temporarily enjoined Respondents from transferring Petitioner outside this District and directed Respondents to file a response to the pending

motions.  (Dkt. 8).  On February 20, 2026, Respondents filed their response (Dkt. 9), and on March 6, 2026, Petitioner filed a reply (Dkt. 10).

Respondents have updated the Court that an immigration judge has rejected Petitioner's arguments that his convictions are not crimes involving moral turpitude, and ordered Petitioner's removal to St. Kitt's.  (*See* Dkt. 11; Dkt. 12).

## **DISCUSSION**

### I.    **Detention Pursuant 8 U.S.C. § 1226**

Title 8 of section 1226 of the United States Code is entitled "Apprehension and detention of aliens."  Section 1226(a) "sets out the default rule," *Jennings v. Rodriguez*, 583 U.S. 281, 288 (2018), and states as follows:

> On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. Except as provided in subsection (c) and pending such decision, the Attorney General—
> (1) may continue to detain the arrested alien; and (2) may release the alien on--
> (A) bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or (B) conditional parole; but (3) may not provide the alien with work authorization (including an "employment authorized" endorsement or other appropriate work permit), unless the alien is lawfully admitted for permanent residence or otherwise would (without regard to removal proceedings) be provided such authorization.

Section 1226(c) "carves out a statutory category of aliens who may *not* be released under § 1226(a)" and addresses "several enumerated categories involving criminal offenses and terrorist activities."  *Jennings*, 583 U.S. at 289.

Specifically, § 1226(c) provides in relevant part that the "Attorney General shall take into custody any alien who . . . is deportable by reason of having committed any offense covered in section 1227(a)(2)(A)(ii) . . . of this title."  8 U.S.C. § 1226(c)(1)(B).

Section 1227(a)(2)(A)(ii) provides for detention of an alien with two or more convictions for crimes involving moral turpitude, specifically:

> (2) Criminal offenses
>
> > (A) General crimes
> >
> > . . . .
> >
> > (ii) Multiple criminal convictions
> > Any alien who at any time after admission is convicted of two or more crimes involving moral turpitude, not arising out of a single scheme of criminal misconduct, regardless of whether confined therefor and regardless of whether the convictions were in a single trial, is deportable.

8 U.S.C. § 1227 (a)(2)(A)(ii).  Thus, a noncitizen convicted of two crimes involving moral turpitude is deportable and subject to mandatory detention under § 1226(c).

The Supreme Court held in *Demore v. Kim*, 538 U.S. 510 (2003) that mandatory detention pursuant to § 1226(c) was constitutionally permissible.  *Id.* at 528 (holding mandatory detention under § 1226(c) "necessarily serves the purpose of preventing deportable criminal aliens from fleeing prior to or during their removal proceedings, thus increasing the chance that, if ordered removed, the aliens will be successfully removed"). In *Jennings*, the Court reaffirmed the holding in *Demore* stating, "the meaning of [§ 1226(c)] is clear" that aliens detained under § 1226(c) are not entitled to an initial bond hearing or to periodic bond hearings thereafter.  583 U.S. at 303-06.  And in *Black v. Decker*, 103 F.4th 133 (2d Cir. 2024), the Second Circuit confirmed that an initial bond hearing was not required pursuant to § 1226(c), but held that a bond hearing may be

- 6 -

required once detention has become unreasonably prolonged.  *Id.* at 142, 155 ("[T]he government may detain noncitizens under section 1226(c) without an initial bond determination.").

## II.    Jurisdiction

Section 1252(b)(9) states as follows:

> Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section.  Except as otherwise provided in this section, no court shall have jurisdiction, by habeas corpus under section 2241 of Title 28 or any other habeas corpus provision, by section 1361 or 1651 of such title, or by any other provision of law (statutory or nonstatutory), to review such an order or such questions of law or fact.

*See also Delgado v. Quarantillo*, 643 F.3d 52, 55 (2d Cir. 2011) (§ 1252 jurisdictional bar precludes district court from entertaining direct or indirect challenge to a removal order); *Morales Jimenez v. Shanahan*, No. 26-CV-1501 (BMC), 2026 WL 1309291, at *2 (E.D.N.Y. May 13, 2026) ("Congress has barred the use of habeas petitions to challenge removal proceedings in district court, even 'indirectly.'").  Pursuant to 8 U.S.C. § 1252(a)(5), "the sole and exclusive means for judicial review of an order of removal" is "a petition for review filed with an appropriate court of appeals."

As set forth above, Respondents contend that Petitioner is subject to mandatory detention under 8 U.S.C. § 1226(c).  "[T]he 'procedures used' for section 1226(c) detainees are very few," and "include no mechanism for a detainee's release, nor for individualized review of the need for detention."  *Black v. Decker*, 103 F.4th at 152.  "The only procedural protection in place is the *Joseph* hearing, at which noncitizens can contest whether they in

fact committed a crime that makes them subject to mandatory detention." *Id.* (citing *Matter of Joseph*, 22 I. & N. Dec. 799 (BIA 1999)); *see also Demore*, 538 U.S. at 514 n.3 ("This '*Joseph* hearing' is immediately provided to a detainee who claims that he is not covered by § 1226(c). At the hearing, the detainee may avoid mandatory detention by demonstrating that he is not an alien, was not convicted of the predicate crime, or that [DHS] is otherwise substantially unlikely to establish that he is in fact subject to mandatory detention." (citation modified)); *M.P.L. v. Arteta*, No. 25-CV-5307 (VSB)(SDA), 2025 WL 2938993, at *4 (S.D.N.Y. Oct. 16, 2025) ("A *Joseph* hearing permits release from detention if the detainee can demonstrate that the underlying bases for invoking § 1226(c), *e.g.*, conviction of deportable offense, did not apply to him. As the Supreme Court recognized, however, contesting the grounds of initial § 1226(c) detention requires a different consideration from holding a bond hearing to determine whether an alien needs to remain detained based on a flight risk or danger to the community." (citation modified)).

Respondents argue that Petitioner's remedy to contest his detention determination is exhaustion of his administrative remedies and a *Joseph* hearing rather than filing a habeas petition federal court. *See Martinez v. Warden,* No. 1:26-CV-2998 DAD CSK, 2026 WL 1398848, at *2 (E.D. Cal. May 19, 2026) ("Under the circumstances of this case, this Court finds that petitioner should not be excused from exhausting administrative remedies. . . . The Joseph hearing process enables petitioner to challenge his mandatory detention under § 1226(c), and the immigration court has the expertise necessary to develop the record and reach a proper decision. Relaxing the exhaustion requirement under these circumstances would encourage others to bypass the administrative exhaustion process.

Finally, in this case administrative review is likely to allow the agency to correct its own mistakes and thus avoid the need for judicial review.").  Petitioner contends that the Court "should waive exhaustion in order to ensure that any bond hearing—including a Joseph hearing—is constitutionally compliant by requiring the burden of proof to be placed on DHS by a standard of clear and convincing evidence."  (Dkt. 10 at 11).

But even were the Court to find it appropriate to waive the requirement for Petitioner to seek a *Joseph* hearing, it still would lack jurisdiction to evaluate whether Petitioner's prior convictions properly constitute crimes of moral turpitude.  Such a determination is necessarily intertwined with Petitioner's removal proceedings over which the Court does not possess jurisdiction.  *See Mycoo v. Warden of Batavia Fed. Det. Facility,* No. 6:20-CV-06405 EAW, 2020 WL 5800920, at *4 (W.D.N.Y. Sept. 29, 2020) ("To the extent Petitioner is asking the Court to determine in the first instance whether his criminal convictions qualify him for detention under § 1226(c), it declines to do so. (citing *Flores-Powell v. Chadbourne*, 677 F. Supp. 2d 455, 467 (D. Mass. 2010))).  Petitioner's attempt to claim that he is only challenging his detention—not his removability—is unpersuasive.  (*See* Dkt. 10 at 12-14).  The basis for Petitioner's claim rests on whether his prior convictions cause him to be subject to deportation (and thus mandatory detention under § 1226(c)).  Petitioner has failed to adequately address Respondent's argument about this Court's lack of jurisdiction and the various cases—including this Court's decision in *Mycoo*—holding just that under similar circumstances.

For example, in *O.D. v. Warden, Stewart Det. Ctr.*, No. 4:20-CV-222-CDL-MSH, 2021 WL 5413968 (M.D. Ga. Jan. 14, 2021), *report and recommendation adopted*, No.

- 9 -

4:20-CV-222 (CDL), 2021 WL 5413966 (M.D. Ga. Apr. 1, 2021), the court addressed petitioner's contention that he was not subject to mandatory detention pursuant to § 1226(c) because he did not have two convictions for crimes involving moral turpitude. *Id.* at *4 ("In effect, Petitioner requests the Court to rule that he does not, in fact, have two convictions for [crimes involving moral turpitude] and thus is not subject to mandatory detention."). The *O.D.* court noted that it lacked authority to consider the argument because a finding that petitioner's convictions did not qualify as crimes of moral turpitude "would necessarily entail a finding that he is not deportable under 8 U.S.C. § 1227(2)(A)(ii)," and "[w]here the issue of mandatory detention is so 'intertwined' with the order of removal, the Court is barred from deciding the matter under 8 U.S.C. § 1252(b)(9)." *Id.* Other courts have concluded similarly. *See Trabelsi, v. Crawford*, No. 1:24-CV-1509 (RDA/LRV), 2024 WL 5497113, at *6 (E.D. Va. Dec. 2, 2024) ("Courts have recognized that, where the issue of mandatory detention is intertwined with the order of removal, the judiciary is barred from deciding the matter under Section 1252(b)(9)."); *Alphonse v. Moniz*, No. CV 21-11844-FDS, 2022 WL 279638, at *4 (D. Mass. Jan. 31, 2022) ("Here, petitioner's claim that his convictions do not subject him to mandatory detention under 8 U.S.C. § 1226(c) are likewise, in substance, a challenge to his removability. . . . Resolving the question of mandatory detention therefore requires adjudicating petitioner's removability."); *Aguayo v. Martinez*, No. 120CV00825-DDD-KMT, 2020 WL 2395638, at *4 (D. Colo. May 12, 2020) ("In count three of the Petition, Mr. Aguayo argues that the ILJ improperly determined he committed a crime of moral turpitude and is thus subject to mandatory detention under 8 U.S.C. § 1226(c). But the Court cannot reach the merits of this argument,

because it lacks jurisdiction to decide it."); *Flores-Powell*, 677 F. Supp. 2d at 467-68 ("Here, the question of the applicability of the mandatory detention statute to Flores's offense, unlike questions regarding the length of detention, is not independent of removal. Rather, the application of 8 U.S.C. § 1226(c)(1)(B) is conditioned on a determination of deportability under 8 U.S.C. § 1227(a)(2)(B)(i).  The order of removal is also conditioned on the determination of deportability. . . .  Therefore, in this respect, unlike other possible challenges to detention, the mandatory detention and the order of removal are intertwined rather than independent.  Moreover, the administrative process includes a mechanism for administrative review of decisions regarding deportability in the detention context.  See 8 C.F.R. § 1003.19(h)(2)(ii).  Consequently, under 8 U.S.C. § 1252(b)(9), the court lacks jurisdiction to decide whether Flores's offense is covered by the mandatory detention statute, 8 U.S.C. § 1226(c).").

So too here, Petitioner's unlawful detention claims cannot be resolved without negating the basis for his pending removal, and therefore the Court lacks jurisdiction to review the claims in the petition.  In other words, resolution of whether Petitioner's convictions for manslaughter in the second degree and theft of services constitute crimes of moral turpitude is inextricably intertwined with the underlying basis for Petitioner's removal, and Petitioner has not shown any other basis to entitle him to a bond hearing.

## CONCLUSION

For the foregoing reasons, the Court finds that it lacks jurisdiction to review the claims in Petitioner's petition and the petition is dismissed without prejudice. To the extent Petitioner's motions for expedited relief remained pending, they are denied as moot. The temporary stay imposed on February 6, 2026, is vacated and the Clerk of Court is directed to close this case.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated:        June 15, 2026
              Rochester, New York